IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>       v.<br><br>JILL DIANE APPLEBURY,<br><br>                        Defendant. | Case No. 3:17-cr-00121-TMB-1<br><br>**ORDER ON MOTION TO VACATE,<br>SENTENCE PURSUANT TO 28 U.S.C.<br>§ 2255 (DKT. 389)** |

## I.    INTRODUCTION

The matter comes before the Court on Defendant Jill Diane Applebury's "Motion to Vacate Her Sentence Under 28 U.S.C. § 2255" and "Memorandum of Law in Support of Her Motion to Vacate Her Sentence Under 28 U.S.C. § 2255" (together, the "Motion ").[1] In her Motion, Applebury requests that the Court vacate her sentence and resentence her on the ground that her trial counsel rendered ineffective assistance.[2] The United States opposes the Motion.[3] Applebury has requested that the Court hold an oral argument and evidentiary hearing on the merits of her Motion, however, the Court finds such a hearing would not be helpful.[4] The Motion has been fully briefed and is ripe for resolution.[5] For the reasons stated below, Applebury's Motion is **DENIED**.

---

[1] Dkts. 389 (Motion to Vacate); 390 (Memorandum).

[2] Dkt. 389 at 1–2.

[3] Dkt. 421 (Opposition).

[4] Dkt. 427 (Motion for Hearing).

[5] Dkt. 389, 390, 421, 427 (Reply).

1

Accordingly, Applebury's Motion for Oral Argument and for an Evidentiary Hearing is **DENIED as moot**.

## II. BACKGROUND

Beginning in or around 1996, Applebury began working as a bookkeeper for Alaska Cardiothoracic Surgery ("ACS"), a cardiology practice in Anchorage, Alaska.[6] In 2018, she was indicted on 53 counts—24 counts of Bank Fraud, 27 counts of Wire Fraud, one count of Fraudulent Transactions with an Access Device, and one count of Aggravated Identity Theft.[7] The Superseding Indictment alleged that from 2008 to 2013, through various schemes, Applebury defrauded ACS of at least $550,000.[8] Applebury pleaded guilty to four counts of Bank Fraud, one count of Wire Fraud, and one count of Fraudulent Transaction with Access Device.[9]

Prior to sentencing, the United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSR") calculating Applebury's total offense level as 25.[10] The PSR stated that the losses resulting from Applebury's fraudulent conduct included $177,795.43 in unauthorized transactions, $58,247.89 in employee taxes, $23,469.69 in employer taxes, and $21,585 in federal tax payments.[11] Additionally, USPO found that Applebury had overbilled by

---

[6] Dkts. 281 at 6–7 (Plea Agreement); 367 at 5 (Revised PSR).

[7] Dkt. 144 (Superseding Indictment).

[8] *Id.* at 4.

[9] Dkts. 285 (Minute Entry); 281.

[10] Dkt. 332 at 1 (Final PSR).

[11] *Id.* at 14.

$446,404 for her bookkeeping services, which was included in the total loss calculation as related conduct.[12] U.S. Probation calculated the total resulting loss to be $727,502.01.[13]

Based on these calculations, USPO calculated a base offense level of 7; plus a 2-point increase for Applebury's abuse of her position of private trust for her role in the offense; plus a 14-point increase for special offense characteristics because the amount of loss was more than $550,000; plus a 2-point increase for obstruction of justice.[14] USPO initially calculated that Applebury's resulting sentencing guideline range as 57-71 months.[15] The Government agreed with U.S. Probation's guideline calculation but asserted that the total loss was $674.001.66—including $581,846.47 in overbilling.[16]

In her Sentencing Memorandum, Applebury argued that the $446,404 that the PSR alleged was overbilled should not factor into her sentencing guideline calculation.[17] She argued that this sum was determined by comparing the amounts she charged ACS for bookkeeping services, and the amounts charged by ACS's replacement bookkeeper, Prime Tech, after Applebury was terminated.[18] Applebury argued that it was improper to assume that she did not work the hours she

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at 14–15.

[15] *Id.* at 1.

[16] Dkt. 343 at 16–19 (Government Sentencing Memorandum).

[17] Dkt. 345 at 2 (Applebury's Sentencing Memorandum).

[18] *Id.* at 2–4; *see also* Dkt. 343-1 at 11–16 (Mason Report).

3

reported merely because Prime Tech worked fewer hours.[19] For instance, she asserted that unlike Prime Tech, she performed numerous duties in addition to bookkeeping.[20]

Applebury proceeded to sentencing on April 1, 2019.[21] During the evidentiary portion of the hearing, the Government called Debra Mason as an expert CPA and a Certified Fraud Examiner who testified that ACS's total loss in the case was $671,077.11.[22] Applebury did not call any witnesses to rebut Mason's testimony. Based on the evidence presented at sentencing, the Court found that the total loss resulting from Applebury's conduct was between $550,000 and $1,500,000.[23] However, the Court found that an enhancement for obstruction of justice, which had initially been included in the PSR's guideline calculation, did not apply.[24] As a result, the Court calculated Applebury's total offense level to be 20 with a sentencing guideline range to be 33-41 months.[25] Applying an upward variance, the Court sentenced Applebury to 48 months of imprisonment.[26] Now Applebury moves to vacate her sentence.[27]

---

[19] Dkt. 345 at 2–4.

[20] *Id.* at 2.

[21] Dkt. 363 (Minute Entry).

[22] Dkt. 371 at 88–89 (Mason Transcript).

[23] Dkt. 386 at 209 (Imposition of Sentence Transcript).

[24] *Id.* at 203–04.

[25] *Id.* at 210.

[26] Dkts. 363; 373 (Judgment).

[27] Dkt. 389.

### III. LEGAL STANDARD

Under 28 U.S.C. § 2255, a district court may "vacate, set aside, or correct" a sentence of a federal prisoner that was imposed in violation of the Constitution or a law of the United States.[28] On a motion for relief under 28 U.S.C. § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[29] If the Court determines that relief is warranted, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[30]

A. *Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is rooted in the Sixth Amendment right to counsel, which is applicable at the plea-bargaining stage of a criminal proceeding.[31] A defendant asserting a claim of ineffective assistance of counsel must satisfy the two-pronged test defined in *Strickland v. Washington*.[32] Under that test, a defendant must show that (1) counsel's performance was deficient, *i.e.*, "fell below 'an objective standard of reasonableness;'" [33] and (2) that the

---

[28] 28 U.S.C. § 2255(a).

[29] 28 U.S.C. § 2255(b).

[30] *Id*.

[31] *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). *See also Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

[32] 466 U.S. 668 (1984).

[33] *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 688).

5

deficiency was prejudicial to the defense, *i.e.*, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[34]

In addressing the first element, the performance prong, judicial scrutiny of an attorney's performance, especially in hindsight, is highly deferential.[35] Attorney conduct should be evaluated from the attorney's perspective at the time of the representation.[36] Generally, an attorney's performance is strongly presumed to fall within the wide range of reasonably professional, competent assistance.[37] "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."[38]

The second prong, prejudice, "focuses on the question whether counsel's deficient performance renders the result of . . . the proceeding fundamentally unfair."[39] A reasonable probability that the results of the proceeding would have been different is "a probability sufficient to undermine confidence in the outcome."[40] A defendant must make a greater showing than simply

---

[34] *Strickland*, 466 U.S. at 694. *See also United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988).

[35] *Strickland*, 466 U.S. at 689.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 691.

[39] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[40] *Strickland*, 466 U.S. at 694.

asserting an error that could theoretically have some effect on the outcome of the proceeding, but, a showing by a preponderance of the evidence is not required by *Strickland*.[41]

Thus, a defendant must prove both deficient performance and consequent prejudice to succeed in establishing ineffective assistance.[42] The court may evaluate one or both prongs in determining whether to grant a defendant's habeas petition on these grounds. However, the court need not inquire whether an attorney's performance was deficient if such alleged deficiency could not have resulted in prejudice under *Strickland*.[43]

B.  *Evidentiary Hearings on Motions Brought Pursuant to § 2255*

"[T]he district court may deny a § 2255 motion without holding an evidentiary hearing if '(1) the petitioner's allegations, accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or allege conclusions rather than statements of fact.'"[44] Thus, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."[45] "Section 2255 requires only that the district court give a claim

---

[41] *Duncan v. Ornoski*, 528 F.3d 1222, 1246 (9th Cir. 2008).

[42] *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) ("there are two components to an effective inquiry, and the petitioner bears the burden of establishing both.").

[43] *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697).

[44] *United States v. Geozos*, No. 3:06-CR-082-RRB-JDR, 2010 WL 4942571, at *2 (D. Alaska Nov. 24, 2010) (quoting Dhillon Khosla, 28 U.S.C. § 2255 Checklist/Updated Supplement to Habeas Corpus Outline 5 (2005)); *see also Lopez-Lopez v. United States*, No. CR 05-1242 TUC-DCB, 2006 WL 2850055, at *1 (D. Ariz. Sept. 28, 2006) ("A district court shall summarily dismiss a § 2255 petition '[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'" (quoting Rule 4(b), Rules Governing § 2255 Actions)).

[45] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

careful consideration and plenary processing, including full opportunity for presentation of the relevant facts."[46]

## IV. ANALYSIS

Applebury raises three grounds for ineffective assistance of counsel.[47] First, Applebury argues that trial counsel's advice that she would likely get a sentence of time-served amounted to a "gross misrepresentation" considering the foreseeability the Government's loss calculation would likely exceed $550,000.[48] Second, Applebury contends that, when it became apparent that trial counsel had miscalculated her sentencing exposure, trial counsel should have advised her of her right to withdraw her guilty plea.[49] Third, Applebury argues that trial counsel should have presented evidence at sentencing to mitigate the Government's loss calculation.[50] But for her trial counsel's ineffectiveness, Applebury claims that she would have received a lower sentence.[51] Therefore, she requests that this Court vacate her sentence and allow her to correct trial counsel's alleged errors at a new sentencing hearing.[52] The Government opposes the merits of each of Applebury's claims of ineffectiveness and asserts that she has waived her rights to bring such claims.[53]

---

[46] *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989) (internal quotations omitted).

[47] Dkt. 390 at 18–23.

[48] *Id.* at 18.

[49] *Id.* at 19.

[50] *Id.* at 21.

[51] *Id.* at 23.

[52] Dkt. 389 at 1–2.

[53] Dkt. 421 at 15–26.

### A. Whether Applebury's Motion Is Barred by the Collateral Attack Waiver Contained in Her Plea Agreement

As a threshold matter, the Court must determine whether the claims contained in Applebury's Motion are barred by the collateral attack waiver contained in her Plea Agreement. Applebury's Plea Agreement states, "The defendant will also waive all rights to collaterally attack the convictions and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the pleas."[54] The scope of this waiver is detailed more precisely later in the Plea Agreement:

> The defendant agrees to waive all rights to collaterally attack the resulting convictions and/or sentence—including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution—the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the conviction or sentence alleging ineffective assistance of counsel—based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty pleas.[55]

The Government argues that this collateral attack waiver bars Applebury's Motion because each of her claims rest on facts known prior to sentencing.[56] In response, Applebury argues that there was no effective waiver of her rights of collateral attack.[57] She seems to contend that a waiver that purportedly waives "matters learned at a future time" cannot be knowing or voluntary.[58]

   1. <u>Whether the Waiver in the Plea Agreement Is Enforceable</u>

---

[54] Dkt. 281 at 2–3.

[55] *Id.* at 21–22 (emphasis added).

[56] Dkt. 421 at 7–12.

[57] Dkt. 426 at 9–12.

[58] *Id.* at 9.

"A defendant's waiver of his rights to appeal and to bring a collateral attack is generally enforced if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made."[59] Courts apply principles of contract law to interpret a plea agreement's terms.[60] Generally, courts "will enforce the plain language of a plea agreement if it is clear and unambiguous on its face."[61] To determine whether a particular waiver was knowing and voluntary, a court must ask "what the defendant reasonably understood to be the terms of the agreement when [s]he pleaded guilty."[62] A defendant may not challenge a waiver contained in a plea agreement by arguing that she "did not realize the strength of [her] potential appellate claims at the time that [s]he entered into the plea agreement."[63] Indeed, courts have repeatedly enforced appeal and collateral attack waivers that waive prospective claims—*i.e.* claims that would have been unknown to the defendant at the time they signed the plea agreement.[64]

---

[59] *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017) (quotations omitted).

[60] *Id.*

[61] *Id.* at 1247.

[62] *United States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2016) (quotations omitted).

[63] *Id.* at 461–62.

[64] *See United States v. Abarca*, 985 F.2d 1012, 1013 (9th Cir. 1993) (enforcing an appeal waiver that waived the right to appeal "any pretrial issues or any sentencing issues"); *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001) (enforcing a prospective appeal waiver); *United States v. Teeter*, 257 F.3d 14, 21 (1st Cir. 2001) ("Indeed, guilty pleas are a staple of our criminal justice system-and a guilty plea inevitably entails a waiver of numerous rights. Although many of these waivers pertain to future events—a waiver of the right to trial by jury is a good example—their prospective nature has never been thought to place them off limits or to render the defendant's act 'unknowing.'"); *United States v. Washington*, No. 3:15-CR-00104-SLG, 2018 WL 4186382, at *3 (D. Alaska Aug. 31, 2018) (enforcing a waiver provision identical to Applebury's); *United States v. Mendenhall*, No. 3:10-CR-00044-EJL, 2014 WL 4773970, at *8 (D. Idaho Sept. 24, 2014) ("[T]he Court finds that Mendenhall unequivocally waived his right to file a § 2255 motion based on circumstances known to him at sentencing").

Courts have generally rejected Applebury's argument that prospective waivers, like the one contained in her Plea Agreement, are invalid.[65] The fact that she could not have known the exact number or nature of the claims that she was waiving in her Plea Agreement does not render it involuntary. The Ninth Circuit in *United States v. Navarro-Botello* summarized it well: "[The defendant] knew he was giving up possible appeals, even if he did not know exactly what the nature of those appeals might be. In exchange, he gained a set sentence. Just because the choice looks different to [the defendant] with the benefit of hindsight, does not make the choice involuntary."[66] The terms of the waiver in this case are not unique. Waivers in most plea agreements are drafted to prospectively waive claims that may arise between the plea and sentence. This is the benefit of the plea bargain—that the Government can avoid costly post-conviction litigation based on known circumstances that arise prior to sentencing.

In exchange for prospectively waiving certain rights, Applebury benefited by receiving assurances from the Government that it would dismiss 47 of the 53 counts against her, resulting in decreased sentencing exposure.[67] During the Court's Rule 11 colloquy, Applebury confirmed that she had read the agreement and reviewed its terms with counsel.[68] She therefore knowingly and voluntarily waived her right to bring ineffective assistance claims except for those "based on information not [then] known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court impose[d] sentence."[69]

---

[65] *See e.g.*, *United States v. Navarro-Botello*, 912 F.2d 318,320 (9th Cir. 1990).

[66] *Id.*

[67] Dkt. 281 at 2.

[68] Dkt. 385 at 19–20 (Change of Plea Transcript).

[69] Dkt. 281 at 21–22.

11

2. <u>Whether Applebury's Claims Fall Within the Scope of the Waiver</u>

The Court must now turn to whether the claims Applebury raises in her Motion are based on information that Applebury knew or, in the exercise of reasonable diligence, could have known at the time the Court imposed sentence. Applebury's first claim, that trial counsel grossly misrepresented her sentencing exposure, is solely based on information known to her prior to sentencing. Specifically, Applebury admits that she was aware the Government would be seeking to add over $400,000 to the loss calculation ahead of sentencing.[70] She also acknowledges that she had reviewed the Government's sentencing memorandum and the PSR, both of which recommended sentences that were higher than trial counsel's estimate.[71] Applebury should have therefore been alerted in advance of sentencing that her sentencing exposure was higher than what her trial counsel may have initially led her to believe. Because Applebury was aware of the underlying facts of her first ineffective assistance claim it is barred by the collateral attack waiver in Applebury's Plea Agreement.

Applebury's second claim, that trial counsel should have advised her of her right to withdraw her guilty plea, is also barred. The record indicates that the Court had already advised Applebury of her right to withdraw her plea if she could "show a fair and just reason for doing so in accordance with Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure."[72] Moreover, Applebury's asserted ground to withdraw her guilty plea was that counsel had underestimated her sentencing exposure. The relevant facts concerning her sentencing exposure, as discussed above,

---

[70] Dkt. 391 at 4 (Applebury Declaration).

[71] *Id.*; Dkt. 386 at 242.

[72] Dkt. 385 at 42–43.

was also known to Applebury prior to sentencing. Therefore, Applebury's second claim is based on information that Applebury knew or should have known prior to sentencing and is barred.

Applebury's third claim, that trial counsel was ineffective for failing to present evidence at sentencing to mitigate the Government's loss calculation, is similarly barred. Prior to sentencing Applebury knew that the Government would be putting on evidence of additional losses.[73] Moreover, she knew of potential witnesses and evidence that may have been able to mitigate the Government's loss calculation.[74] Having been present at the evidentiary hearing, Applebury was also aware of the fact that her trial counsel did not present any such evidence and that the Court had found that the victim's total loss exceeded $550,000. Thus, Applebury's was aware of all the operative facts underlying each of her claims at the time the Court imposed the sentence. Pursuant to the collateral attack waiver contained in the Plea Agreement, the Court must deny the Motion and need not address the merits of Applebury's claims.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") is required to appeal a petition brought under 28 U.S.C. § 2255.[75] Under the Federal Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."[76] Where a petitioner makes "a substantial showing of the denial of a constitutional right," a COA

---

[73] Dkt. 391 at 4.

[74] *Id.* at 6. In fact, Applebury claims to have informed her trial counsel of the "ample evidence" showing that she had done substantially more work than the replacement bookkeeper before sentencing. *Id.*

[75] 28 U.S.C. § 2253(c)(1)(B); *United States v. Asrar*, 116 F.3d 1268, 1269 (9th Cir. 1997).

[76] Rules Governing § 2255 Proceedings, Rule 11(a).

should be issued.[77] This standard requires that the petitioner "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further."[78] Applebury's Motion does not meet this standard. The claims raised in Applebury's Motion are barred by the terms of her Plea Agreement. Accordingly, the Court declines to issue a COA in this action.

## VI. CONCLUSION

For the forgoing reasons, Applebury's Motion at docket 389 is **DENIED**. Accordingly, Applebury's Motion for Oral Argument and for An Evidentiary Hearing at docket 427 is **DENIED as moot**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 19th day of August, 2020.

TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[77] 28 U.S.C. § 2253(c)(2).

[78] *United States v. Greene*, No. 3:09-CR-00053-1-TMB, 2015 WL 13670726, at *1 (D. Alaska Apr. 14, 2015) (quoting *Muth v. Fondren*, 676 F.3d 815, 822–23 (9th Cir. 2012)).